RAYMOND et v. HEARON et.

Ohio Appeals, 1st Dist., Hamilton Co.

No. 3152.   Decided Mar. 26, 1928.

**First Publication of This Opinion.**

Syllabus by Editorial Staff.

**DECEDENTS' ESTATES.**

(220 Wc) An attorney, witness to a will, may give testimony concerning it, but as to the terms of a former will, the best evidence is the written will itself.

**TRIAL.**

(590 Mc) Report to the court of a witness talking to jurors during a recess in the trial of a will contest, evidences no improper effect was produced by the conversation and justifies the court in overruling a motion for mistrial.

Error to Common Pleas.
Judgment affirmed.

Powell & Smiley, Alcorn & Alcorn, Barker, Davison & Shattuck and Dolls, O'Donnell & Cash, Cincinnati, for Raymond et.

Edward H. Brink and W. F. Fox, Cincinnati, for Hearon et.

STATEMENT OF FACTS.

The action below was to contest the validity of the last will and testament of Laura Crosby, which had been admitted to probate on the 22nd day of January, 1926. The trial resulted in a verdict finding that the paper writing was not the last will and testament of Laura Crosby, and judgment was entered on the verdict. From that judgment, error is prosecuted to this court.

It appears that Laura Crosby was a widow who died childless, leaving an estate of approximately $38,000.00. The contestant was her niece.

It appears that Mrs. Crosby made her first will in 1917.

In 1919, Mrs. Crosby executed a second will.

In this 1919 will the contestant was not remembered. One-third of the estate was left to another blood niece, who was a sister of the contestant; one-third to a niece of Mrs. Crosby's husband; and the remaining one-third to Mr. Koehler, less two small contingent legacies, one of $1,000, and two of $500.00 each.

A third will was executed in 1922, and was written and witnessed by Mr. Powell, who had drawn and witnessed the former wills.

At this time, Mrs. Crosby was approximately 78 years of age, with greatly impaired eyesight.

This 1922 will was executed in Mrs. Crosby's room, at a rooming house which had been secured for her, through the instrumentality of Mrs. Koehler, in the presence of Mr. Powell, Mr. Koehler, and Dr. Weaver; Mr. Powell and Dr. Weaver being witnesses to the will.

HAMILTON, P.J.

It must be borne in mind that the exercise of undue influence need not be shown by direct proof. It may be inferred from circumstances.

The circumstances and the relations existing between Mr. Koehler and Mrs. Crosby and their business and social matters were fully gone into at the trial.

The testimony of the contestee Koehler, upon being called by the contestant for cross-examination, brought out many facts for the consideration of the jury on the question at issue. The relations existing between Mr. Koehler and Mrs. Crosby were of a most confidential nature. Koehler did not take the stand except on being called on cross-examination by the contestant. The jury probably took this failure to take the stand into consideration in arriving at their verdict. The fact that Mr. Koehler, whose advice in all business and social matters Mrs. Crosby followed strictly, arranged for and was present at the execution of these wills, in which he was bequeathed a large legacy, undoubtedly had great weight with the jury.

As heretofore stated, we cannot go into a complete discussion of the evidence as presented by the voluminous record, but we think enough has been stated to show that the facts involved were purely jury questions. The jury having resolved the facts against the contestees and against the validity of the will, we will not disturb the verdict and judgment on the weight of the evidence.

One of the points of rejection of evidence stressed by counsel in the brief, is, the refusal of the court to permit Richard Powell, counsel who had written and witnessed the will in 1917, to answer certain questions. It is argued that the court misconstrued the law applicable to confidential relations between attorney and client, and that the court excluded the testimony on that ground. An examination of the record does not bear out this contention of counsel. It is the law that where an attorney is a witness to the will of a client, the attorney may give testimony concerning it; that the signing as a witness, at the request of the testator, waives the protection of the rule of confidential communications; but the testimony excluded concerned the will of 1917.

Later, the witness was asked:

"Q.  Will you give us, to the best of your memory, the contents of that will?"

Objection to answering the question was sustained. The objection to this question was sustainable on the ground that the matter inquired about was in writing, and the writing was the best evidence of what it contained. The will of 1917 was not produced. There was no evidence that the paper was lost, or that it had been destroyed, or that it could not be found. The record discloses only that the witness did not know where it was. Under the rule of the best evidence, the question asked was properly excluded.

Exhibits would be but cumulative evidence, as there is both oral and written testimony to the same point and concerning the same matter as is contained in the fragmentary letters sought to be introduced.

Another ground of error is suggested, based on the following incident. It appears that during the trial a witness for contestees, during recess, spoke to some of the jurors about the case. The jurors immediately reported the incident to the court. Contestees moved for a mistrial. The court investigated the matter, and overruled the motion.

The prompt report by the jurors to the Court shows that no improper effect was produced by anything said to them. On the other hand, it shows the jurors to have had a high sense of their duty and obligation. The court did not err in overruling the motion.

We find no prejudicial error in the record, and the judgment is affirmed.

(Mills and Cushing, JJ., concur.)